JUDGE LYNCH

08 CV 6801

Michael F. Maschio
(MM-2366)
COWAN, LIEBOWITZ & LATMAN
1133 Avenue of the Americas
New York, NY 10036-6799
Telephone: (212) 790-9200
Facsimile: (212) 575-0671

Attorneys for Plaintiffs
MLB Advanced Media, L.P.

RECEIVED
JUL 30 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MLB ADVANCED MEDIA, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>MEDIACORP, INC.,<br><br>Defendant. | COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff MLB Advanced Media, L.P. ("MLBAM" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Defendant MediaCorp, Inc. ("MediaCorp" or "Defendant"), states as follows:

**NATURE OF THE ACTION**

1. This action arises out of MediaCorp's willful breaches of a license agreement between MLBAM and MediaCorp (the "Agreement"), MediaCorp's infringements and dilution of Major League Baseball trademarks, unfair competition, false advertising and false designation of origin.

2. More specifically, and as set forth in detail below, through a license agreement MLBAM granted Defendant the exclusive right to operate, and to denominate as official, a

Korean-language web site on the Internet, targeted to the South Korean market, dedicated to the coverage of MAJOR LEAGUE BASEBALL matters. Defendant has breached numerous of its obligations under that agreement, and, despite having been provided ample notice and opportunity, has failed to cure those breaches. Despite MLBAM's termination of the license agreement, Defendant has continued, without authorization, to use and display MAJOR LEAGUE BASEBALL trademarks in violation of MLBAM's rights.

## PARTIES

3. MLBAM is a limited partnership organized under the laws of the State of Delaware with its principal place of business at 75 Ninth Avenue, New York, New York 10011. Its General Partner is MLB Advanced Media, Inc., a Delaware corporation with its principal place of business at 75 Ninth Avenue, New York, New York 10011.

4. On information and belief, Defendant MediaCorp is a Korean corporation with its principal place of business at 7F, Youngjin Bldg, 1632-10, Seochodong, Seochogu, Seoul, Korea 137-878.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

6. This Court has personal jurisdiction over Defendant by virtue of its transacting, doing, and/or soliciting business within the State of New York and/or its commission of acts inside and outside of New York that have an effect within this State.

7. Venue is proper within this district pursuant to 28 U.S.C § 1391(b) and (c) and 28 U.S.C. § 1400(a).

8. In the alternative, this court has personal jurisdiction over Defendant, and venue is proper, by virtue of Paragraph 23(o) of the Agreement, which provides that the:

"Agreement, and all matters or disputes arising from this Agreement, is governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and performed entirely within that state. All disputes arising out of or relating to this Agreement, and the relationship created and transactions contemplated thereby are subject to the exclusive jurisdiction and venue of the state and federal courts located in New York County, New York. Each party irrevocably consents to, and waives any defer or objection to that jurisdiction and venue. Each party waives any right it may have to assert the doctrine of forum non conveniens or similar doctrine with respect to any proceeding brought in accordance with this Section."

**MLBAM and MLB.COM**

9. MLBAM is the Internet and interactive media company of MAJOR LEAGUE BASEBALL. MLBAM was established following a unanimous vote by the 30 MAJOR LEAGUE BASEBALL club owners to centralize the Internet and interactive media operations of MAJOR LEAGUE BASEBALL. MLBAM manages and operates the official league site, www.MLB.com, and each of the official MAJOR LEAGUE BASEBALL Club sites (e.g., www.mets.com and www.yankees.com) to create the most comprehensive MAJOR LEAGUE BASEBALL resource on the Internet.

10. Pursuant to an agreement between and among MLBAM, each MAJOR LEAGUE BASEBALL Club, MAJOR LEAGUE BASEBALL Properties, Inc., and the Office of the Commissioner of Baseball (collectively, the "MLB Entities"), MLBAM: (a) is the exclusive licensee of the trademarks of the MLB Entities (the "MLB Marks") to the extent each is used via the Internet and interactive media; (b) has the exclusive right to take action in protecting against infringement of the MLB Marks via the Internet and interactive media, and to institute suit in protection thereof.

**THE PARTIES' LICENSE AGREEMENT**

11. On or about March 3, 2006, MLBAM and MediaCorp entered into the Agreement, pursuant to which MLBAM granted MediaCorp, among other things, the right to create a World Wide Website dedicated exclusively to the coverage of MAJOR LEAGUE

BASEBALL, available predominantly in the Korean language, and targeted to the Territory of South Korea (the "MediaCorp Site"); sell subscriptions to certain MAJOR LEAGUE BASEBALL content on the Internet; to denominate the MediaCorp Site as the "Official Korean Licensee of MLB.com;" and the exclusive right to use the MLB Marks and other "Licensed Properties" as defined in the Agreement.

12. The Agreement license period began on March 3, 2006, and was scheduled to end on the later of: (i) November 9, 2008, and (ii) immediately after the final game of the 2008 MAJOR LEAGUE BASEBALL World Series Championship. *See* Agt. ¶ 9.

13. In exchange for the rights and licensed granted by MLBAM to MediaCorp in the Agreement, MediaCorp agreed, among other things, to pay MLBAM an Annual Minimum Guarantee. Pursuant to Paragraph 12(b) of the Agreement, the Annual Minimum Guarantee for 2008 was to be paid by MediaCorp to MLBAM in accordance with the following payment schedule:

a. $1,700,000 on or before February 1, 2008;

b. $1,275,000 on or before May 1, 2008;

c. $1,275,000 on or before July 1, 2008.

14. Additionally, MediaCorp agreed to pay MLBAM 15% of certain revenue it received, after MediaCorp recouped an amount equal to the Annual Minimum Guarantee (the "Revenue Share"). *See* Agt. ¶ 12(c).

15. The Agreement provided that for any late payment, MediaCorp was obligated to pay to MLBAM "in addition to the amount due, interest accruing at the time such obligation was first owed at the greater of (i) three per cent (3%) more than the highest prime lending rate of JP

Morgan Chase Bank, or (ii) one per cent (1%) per month, on the amounts delinquent for the period of the delinquency." Agt. ¶ 12(c).

16. Pursuant to Paragraph 14 of the Agreement, MediaCorp agreed to send MLBAM certain reports detailing, among other things, numbers of subscribers, website traffic and page views, and revenues for the duration of the term.

17. In Paragraph 18 of the Agreement, which survived after the termination of the Agreement, MediaCorp "acknowledge[d] the proprietary nature of all the Licensed Properties and all other trademarks, service marks, copyrights, patents and other proprietary assets owned, controlled, first used, and/or applied for in and/or registered with the U.S. Patent and Trademark Office and/or the Copyright Office" by the MLB Entities; acknowledged that all right, title and interest in such property belonged to the MLB Entities; and acknowledged "that a license from MLBAM is required to use via the Internet or other interactive media" any of those rights. MediaCorp also agreed that it would not make use of the Licensed Properties of other property rights owned by the MLB Entities in a manner unauthorized by MLBAM.

18. Following the execution of the Agreement, MediaCorp launched the MediaCorp Site. The MediaCorp Site was available and accessible via the Internet at the uniform resource locator ("URL"): www.major2.co.kr and remains accessible at that URL to the present date.

**MEDIACORP'S BREACHES OF THE AGREEMENT**

19. MediaCorp repeatedly has breached and/or failed to comply with its obligations under the Agreement. MediaCorp repeatedly has failed and/or refused to cure such breaches despite having been provided with proper notice and opportunity to do so by MLBAM.

20. In material breach of Paragraph 12(b) of the Agreement, MediaCorp failed to pay to MLBAM timely installments on the Annual Minimum Guarantee in 2008. MediaCorp failed to pay $1,700,000 by February 1, 2008; $1,275,000 by May 1, 2008; and $1,275,000 by July 1,

2008. MediaCorp's only payments in 2008 were a late payment of $500,000 on March 28, 2008, a late payment of $50,000 on July 11, 2008, a late payment of $50,000 on July 18, 2008, and a late payment of $50,000 on July 25, 2008. Pursuant to Paragraph 12(b) of the Agreement, $3,600,000, plus accruing interest, remains due and owing to MLBAM.

21. MLBAM sent to MediaCorp formal written notices of default on February 8, 2008, June 3, 2008, and June 27, 2008.

22. In various communications with MLBAM, MediaCorp has acknowledged and admitted that it has defaulted on the Agreement and owes MLBAM considerable payments:

a. On June 9, 2008, MediaCorp sent a letter to MLBAM in which MediaCorp acknowledged that it entered into a license agreement with MLBAM, and admitted that it had not paid $2,475,000 plus late fees.

b. On June 30, 2008, MediaCorp admitted that it still owed MLBAM $2,475,000 excluding interest on the payments previously due, would owe an additional $1,275,000 as of July 1, 2008, and that because MediaCorp failed to pay on time, MLBAM could "close this matter by legal process."

c. On July 4, 2008, MediaCorp promised to pay $100,000 on July 7, 2008 as partial payment and stated, "As we have discussed, this payment is too small amount but please understand MediaCorp's willingness [sic] of payment." MediaCorp did not make the $100,000 payment on July 7, 2008.

d. On July 15, 2008, MediaCorp stated that it had received MLBAM's official letter of termination and admitted that, "We know it has [sic] caused from MediaCorp's payment problem."

23. On information and belief, the Gross Revenue received by MediaCorp has surpassed the Annual Minimum Guarantee and consequently, MediaCorp has accumulated Revenue Share obligations.

24. On information and belief, and in material breach of Paragraph 12 of the Agreement, MediaCorp has not paid the Revenue Share it owes to MLBAM.

25. Pursuant to the Agreement, MLBAM had the right to terminate the Agreement if MediaCorp failed "to make any payment as set forth in this Agreement, and if such non-payment continues for five (5) business days after written notice of such default is sent to MediaCorp, in which event, further, all payments due to MLBAM under this Agreement shall then become due regardless of payment dates provided herein." *See* Agt. ¶ 10.

26. As a result of MediaCorp's material breaches of the Agreement, and MediaCorp's failures to cure those breaches, MLBAM terminated the Agreement in accordance with its terms, by written notice to MediaCorp dated July 9, 2008.

**MEDIACORP'S POST TERMINATION BREACHES AND INFRINGEMENT OF MLB TRADEMARKS**

27. Despite MLBAM's proper termination of the Agreement, MediaCorp has continued to operate the MediaCorp Site in willful disregard of the rights of MLBAM and the other MLB Entities. Among other things, the MediaCorp Site continues to be falsely denominated as "An Official Licensee of MLB.com," and, in connection with that false denomination, continues to feature numerous MLB Marks. The MediaCorp Site remains accessible to Internet end users worldwide, including within the United States.

28. Since the date of termination and continuously thereafter, MediaCorp has used on the MediaCorp Site, without authorization from MLBAM and breach of Paragraph 18 of the

Agreement, famous and distinctive registered MLB Marks, including without limitation the following:

a. MLB.COM logo, United States Patent and Trademark Office Trademark Reg. No. 2802812;

b. MLB silhouetted batter logo, United States Patent and Trademark Office Trademark Reg. No. 2573096;

29. Copies of United States Trademark Registrations for the above MLB Marks are attached hereto as Exhibit A. In connection with its uses of these and other MLB Marks, MediaCorp falsely has denominated the MediaCorp Site as "An Official Licensee of MLB.com".

30. At all relevant times, by virtue of the following notice (the "Notice") published in English on the bottom of every page of the MediaCorp site, MediaCorp does not dispute that the MLB Marks and all other Licensed Properties are the exclusive property of MLBAM, acting on its own behalf or on behalf of the other MLB Entities, and that all rights with respect to those items are reserved:

> The following are trademarks or service marks of Major League Baseball entities and may be used only with permission of Major League Baseball Properties, Inc. or the relevant Major League Baseball entity: Major League, Major League Baseball, MLB, the silhouetted batter logo, World Series, National League, American League, Division Series, League Championship Series, All-Star Game, and the names, nicknames, logos, uniform designs, color combinations, and slogans designating the Major League Baseball clubs and entities, and their respective mascots, events and exhibitions.

31. On information and belief, MediaCorp has continued to use the MLB Marks and Licensed Properties after the termination of the Agreement, and without any right or license, to sell and profit from advertisements, subscriptions, and other content.

**FIRST CLAIM FOR RELIEF**

**Breach of Contract**

32. Plaintiff repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

33. The Agreement is a valid and enforceable contract.

34. MLBAM has performed all of its obligations under the Agreement.

35. MediaCorp was obligated to pay to MLBAM the Annual Minimum Guarantee, Revenue Share, and interest on late payments. MediaCorp materially breached the Agreement by failing to pay the sums due to MLBAM.

36. As a result of the foregoing breaches, MLBAM has suffered damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**Unfair Competition, False Advertising and False Designation of Origin**

37. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

38. The MLB Marks (including but not limited to the above-referenced federally registered trademarks), as used by MLBAM and the other MLB Entities and their licensees in connection with the provision of goods and services, are famous and distinctive and have become associated with MLBAM and the other MLB Entities so as to exclusively identify MLBAM and the other MLB Entities' businesses, products and services.

39. Because of Defendant's unauthorized and wrongful uses of the MLB Marks following termination of the Agreement, consumers are likely to be confused and/or deceptively misled to believe that the MediaCorp Site originates with or is endorsed, authorized or sponsored by MLBAM or the other MLB Entities.

40. Defendant's actions constitute unfair competition, false designation of origin and false advertising and the use of false or misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. Defendants' actions have caused and are causing great and irreparable injury to MLBAM and to the extensive business and goodwill symbolized by the MLB Marks (including but not limited to the above-referenced federally registered trademarks), leaving MLBAM with no adequate remedy for such injury at law.

42. By reason of the foregoing, MLBAM is entitled to, in addition to injunctive relief against MediaCorp restraining further acts of unfair competition, false designation of origin and false advertising and the use of false or misleading descriptions and representations, an award of compensatory and treble damages, profits, costs and attorneys' fees.

**THIRD CLAIM FOR RELIEF**

**Dilution of Famous Marks**

43. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

44. The MLB Marks (including but not limited to the above-referenced federally registered trademarks) are famous and distinctive trademarks within the meaning of the Anti-Dilution Act, 15 U.S.C. § 1125(c), and were so prior to when Defendant began using in 2006.

45. Defendant has no control over the quality or nature of Defendant's MediaCorp Site or its uses of the MLB Marks and other content therein.

46. Defendant's unauthorized commercial uses of the MLB Marks are resulting, and will continue to result, in dilution and blurring of the famous and distinctive nature of the MLB Marks (including but not limited to the above-referenced federally registered trademarks), in violation of 15 U.S.C. § 1125(c). Defendant's actions in this respect have been willful and

deliberate, and have been taken with the intent to trade upon the reputation of MLBAM and the MLB Entities.

47. The distinctive nature of the MLB Marks is of enormous value to, and the result of significant efforts by, MLBAM and the MLB Entities, all of whom strive to maintain strict control over the use and licensing of the MLB Marks.

48. Defendants' actions have caused and are causing great and irreparable injury to MLBAM and to the extensive business and goodwill symbolized by the MLB Marks (including but not limited to the above-referenced federally registered trademarks), leaving MLBAM with no adequate remedy for such injury at law.

49. By reason of the foregoing, MLBAM is entitled to, in addition to injunctive relief against MediaCorp restraining further acts of infringement and dilution, an award of compensatory and treble damages, profits, costs and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**

**Common Law Trademark Infringement and Unfair Competition**

50. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51. Defendant's conduct as detailed herein constitutes trademark infringement and unfair competition under common law.

52. Defendant's actions are deceptive, willful and intentional.

53. Defendant's actions have caused and will continue to cause MLBAM damage.

**FIFTH CLAIM FOR RELIEF**

**Violation of the New York Antidilution Statute**

54. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55. Defendant's conduct constitutes dilution of the value of MLBAM's trademarks in violation of New York General Business Law § 360-1.

56. Defendant's actions have caused and will continue to cause MLBAM damage.

**SIXTH CLAIM FOR RELIEF**

**Unjust Enrichment**

57. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58. MLBAM granted licenses to and performed services on behalf of MediaCorp under the reasonable expectation that MediaCorp would pay MLBAM for such licenses and services.

59. MediaCorp has been unjustly enriched by the use of the licenses and services delivered to it by MLBAM. It would be inequitable for MediaCorp to retain those benefits without compensating MLBAM for the reasonable value of the licenses and services MLBAM delivered to MediaCorp.

60. MLBAM is entitled to receive from MediaCorp the reasonable value of the foregoing licenses and services, plus interest.

**SEVENTH CLAIM FOR RELIEF**

**Quantum Meruit**

61. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62. During the term of the Agreement, MLBAM delivered goods and services to MediaCorp under the reasonable expectation that MediaCorp would pay MLBAM for services.

63. MediaCorp has benefited from the goods and services delivered to it by MLBAM. It would be inequitable for MediaCorp to retain those benefits without compensating MLBAM for the reasonable value of the goods and services MLBAM delivered to MediaCorp.

64. By reason of the foregoing, MLBAM is entitled to the reasonable value of goods and services provided, plus interest.

**REQUEST FOR INJUNCTIVE RELIEF**

65. Defendant's conduct has left MLBAM with no choice but to seek injunctive relief from this Court in an effort to stop Defendant from using the Licensed Properties as defined in the Agreement.

66. Among other things, this is because the value of the Licensed Properties is and will be substantially diminished or destroyed as a result of Defendant's unauthorized use of that information, such that MLBAM is unfairly disadvantaged in competing for licensing deals, including MLBAM's attempts to re-license the Licensed Properties targeted to the Territory of South Korea.

67. As discussed above, the Licensed Properties are of enormous value to, and the result of significant efforts by, MLBAM and the MLB Entities, all of whom strive to maintain strict control over the use and licensing of the Licensed Properties. Continued unauthorized commercial uses of the Licensed Properties by Defendant would cause and create substantial loss to MLBAM.

68. As further discussed above, MLBAM has no adequate remedy at law for Defendant's actions. The injury that MLBAM has suffered, and will continue to suffer, as a proximate result of Defendant's continued unauthorized use of the Licensed Properties, in addition to the loss of value to and distinctiveness and goodwill associated with the Licensed Properties, may not be fully measured or compensated by money damages and, even in the event

such measurement and compensation were possible, the resulting amount of damages would be sufficiently significant so as to preclude MediaCorp from fully satisfying the resulting judgment.

69. Unless restrained permanently, Defendant will continue to violate MLBAM's rights.

70. Accordingly, a permanent injunction restraining and enjoining Defendant from continuing its actions is necessary to afford MLBAM complete, meaningful and immediate relief.

WHEREFORE, plaintiff prays for a judgment as follows:

(1) Declaring that Defendant's actions violate MLBAM's rights under the Lanham Act, the New York General Business Law and applicable common law;

(2) Preliminarily and permanently enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with it, them or any of them from assisting in or contributing to the following:

(A) any unauthorized use of any MLB Mark or any other MLB content, material or right licensed under the Agreement and/or protected by applicable law;

(B) any false or misleading description of fact, or false or misleading representation of fact, or other act of unfair competition, which is likely to cause confusion, or to cause mistake, or to deceive as to the existence or nature of an affiliation, connection or association between Defendant and MLBAM or as to the origin, sponsorship, endorsement, authorization or approval of Defendant's goods,

services or commercial activities by MLBAM or the MLB Entities; and

(3) Ordering Defendant to cease and desist from any and all use via the Internet, any wireless device or otherwise, of any MLB Mark or any other MLB content, material or right licensed under the Agreement;

(4) Awarding MLBAM actual and compensatory damages in an amount to be determined at trial, including without limitation all amounts due and owing under the Agreement, MediaCorp's profits attributable to its infringement of trademarks as described above, together with any and all other remedies to which MLBAM may entitled under the Lanham Act or the New York General Business Law;

(5) Awarding MLBAM all special, treble, statutory and/or punitive damages to which it is entitled under applicable federal and state laws;

(6) Awarding MLBAM its reasonable attorneys' fees, interest, full costs and disbursements to which it is entitled under applicable federal and state laws and the common law, including without limitation pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 505; and

(7) Directing such other and further relief as the Court deems just and proper.

Dated: July 29, 2008
New York, New York

COWAN, LIEBOWITZ & LATMAN

By: Michael F. Maschio (MM - 2366)

1133 Avenue of the Americas
New York, NY 10036-6799
Telephone: (212) 790-9200
Facsimile: (212) 575-0671

*Attorney for Plaintiff*
*MLB Advanced Media, L.P.*

Of Counsel:

Michael J. Mellis, MLB Advanced Media, L.P.
Mitchell P. Schwartz, MLB Advanced Media, L.P.